**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSHUA SHIREY,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **JOHN LADONNE, JANE HENRY, MD,** | **NO.  18-4960** |
| **JOHN WIENER, DR. JANE MUSHDAQ,** | |
| **JOHN FAUBERT, NEILON SHAMUS** | |
| **AND JOHN WILLIAMSON, III,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Joshua Shirey, an inmate in the custody of the Pennsylvania Department

of Corrections, brings suit pursuant to 42 U.S.C. § 1983 against Defendants Dr. Stephen Weiner,

Dr. Saiqa Mushtaq, Michelle Henry, Robert Ladonne, Todd Faubert, Shamus Nealon, and Tyron

Williamson (collectively "Defendants"),[1] all of whom are employed by, or affiliated with, the

Pennsylvania state prison system.  Plaintiff brings a battery of claims against Defendants,

alleging they violated Plaintiff's First, Fourth, Eighth, and Fourteenth Amendments rights.  Now

pending are Defendants' motions to dismiss Plaintiff's First Amended Complaint ("Complaint"),

which, for the following reasons, will be granted in part and denied in part.

### I.    Factual Background[2]

### A.  The Parties

At the time of the Complaint's filing, Plaintiff was incarcerated at the State Correctional

Institute at Retreat ("SCI-Retreat").  The thrust of Plaintiff's claims concern the medical

---

[1] Plaintiff's Complaint misspells the names of, or otherwise misidentifies, several of the named Defendants.  For clarity's sake, the Court will use the correct spelling of Defendants' names here.

[2] The following factual background comes from the allegations contained in Plaintiff's Complaint, *see Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), which this Court construes liberally, given Plaintiff's *pro se* status, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

treatment he received before his transfer to SCI-Retreat—first, during his incarceration at the State Correctional Institute at Graterford ("SCI-Graterford") and, later, during his incarceration at the State Correctional Institute at Phoenix ("SCI-Phoenix").[3]

Defendants are individuals that, for the relevant period here, were employed by or working at SCI-Graterford and, later, at SCI-Phoenix: Weiner, a physician, was head of the facilities' medical departments; Mushtaq, a physician, Henry, a nurse practitioner, and Ladonne, a psychological services specialist, were members of the facilities' Psychiatric Review Team ("PRT"); Faubert was a housing unit manager at SCI-Phoenix; Williamson was a correctional officer at SCI-Phoenix; and, Nealon, a Pennsylvania parole officer, supervised prisoners at SCI-Phoenix and other facilities.

### B. Plaintiff's Medical Conditions

Plaintiff suffers severe joint and nerve pain because of Lyme disease. If not treated, the pain causes sleep deprivation, anxiety, hallucinations, paranoia, panic attacks, psychotic episodes, and suicidal thoughts. To treat the pain as well as his anxiety, Plaintiff has taken Gabapentin—a prescription medication approved to treat neuropathic pain. Other medications have failed to adequately treat Plaintiff's condition.

### C. 2018 Incarceration

In June of 2018, after violating the conditions of his parole, Plaintiff was incarcerated at SCI-Graterford. A parole officer informed SCI-Graterford's medical staff of Plaintiff's medical conditions and provided the facility with his medical records. In addition, the officer instructed the medical staff to provide Plaintiff with 1,200 milligrams of Gabapentin three times a day, in compliance with orders from Plaintiff's treating physician at the Reading Hospital Medical

---

[3] In July of 2018, SCI-Graterford closed, and prisoners incarcerated there—including Plaintiff—were transferred to a new facility at SCI-Phoenix. In addition, some prison staff at SCI-Graterford—including Wiener, Mushtaq, Henry, and Ladonne—moved into analogous roles at SCI-Phoenix.

Group Center. An intake nurse informed Plaintiff that Weiner—as head of the facility's medical department—had to approve of the provision of Gabapentin. After reviewing Plaintiff's records, Weiner, in consultation with the PRT, declined to prescribe Plaintiff Gabapentin or similar pain medication.

Plaintiff attributes Weiner's decision to deny him Gabapentin to retaliatory animus. During a previous period of incarceration at SCI-Graterford in 2015, Plaintiff had clashed with Weiner and members of the PRT over his medical treatment, and, in particular, over Weiner's decision to stop prescribing Gabapentin to Plaintiff. In response, Plaintiff filed multiple grievances against Weiner in 2015. Plaintiff claims that Weiner denied him Gabapentin upon his reincarceration in 2018 in retaliation for Plaintiff's past grievances.

### D. June Panic Attack

At some point in June of 2018—he does not specify when—Plaintiff suffered the first of several mental health episodes. Plaintiff began experiencing excruciating pain to the point that he was unable to sleep, which he attributed to the lack of Gabapentin. He complained to Weiner and the PRT that the severe pain was leading to suicidal thoughts. Finally, as a result of the pain and lack of sleep, Plaintiff suffered a panic attack in which he thought inmates were chasing him with knives.

Plaintiff was taken to Einstein Medical Center, an outside medical facility, where he was given Gabapentin and then released. Staff at Einstein Medical Center informed Weiner that Plaintiff needed Gabapentin, or else to be moved to a hospital treatment center. Weiner and the PRT, however, again declined to prescribe Plaintiff Gabapentin: Weiner informed him that "you'll never get what you want deal with it." Instead, Plaintiff was moved to a psychiatric observation cell. The lack of treatment left him in severe pain and contemplating suicide.

### E. Assault

Sometime after the panic attack, the PRT informed Plaintiff that he would be moved from the psychiatric observation cell to a new cell in a restrictive housing unit known as "J-Block." During the move to J-Block, Plaintiff became anxious and paranoid—he thought officers were aiming guns at him and were going to kill him. As a result, Plaintiff panicked. In response, officers physically assaulted Plaintiff, throwing him against a wall, leaving a contusion on his forehead.

After the assault, Plaintiff was left in his cell for a prolonged, yet unspecified period of time. At some point, a guard inquired into whether Plaintiff had received medical treatment. When Plaintiff stated that he had not, the guard responded: "Figures. By policy the [nurse] have to come down but since they fucked you up she never came down so they don't have to do a report. She aint [sic] coming down."

Eventually, Plaintiff was taken to the medical department where he was evaluated by a nurse, and pictures were taken of his injuries. While at the medical department, the PRT visited Plaintiff and inquired into what happened. The PRT did not report the incident to security, police, or Weiner. Thereafter, Plaintiff was moved off J-Block to another section of SCI-Graterford.

### F. Moves & Abscondence

On July 16, 2018, Plaintiff was moved from SCI-Graterford to SCI-Phoenix. During the move, officers discarded Plaintiff's personal property and paperwork, including original copies of grievances filed by Plaintiff. In late July, Plaintiff was moved again—this time to the Parole Violator Center at Kintock-Erie ("Kintock").

At some point in late September 2018, Plaintiff absconded from Kintock. A warrant was

put out for Plaintiff's arrest. While out of custody, Plaintiff began taking Gabapentin again.

On September 26, 2018, Plaintiff was apprehended at the Sands Casino in Bethlehem, Pennsylvania. Plaintiff was transported to St. Luke's Hospital in Allentown, Pennsylvania, where Plaintiff was determined to be homicidal and suicidal. Plaintiff was then released from St. Luke's Hospital and transported back to SCI-Phoenix.

### G. Processing at SCI-Phoenix

Plaintiff was processed into SCI-Phoenix by Williamson. During intake, Plaintiff provided the prison with his medical history, including the records from St. Luke's Hospital.

Plaintiff also informed Williamson that he was gay, and thus required special housing to protect against sexually aggressive inmates. In response, Williamson stated "damn, that's right your [sic] a punk"—a derisive prison term for a gay man who dresses femininely. Williamson continued: "I hate you faggots. Your [sic] the reason all this shit is fucked up in these places today you wanna [sic] act like women and wonder why you get raped."

After making the derisive comments, Williamson improperly processed Plaintiff's personal property, including a few thousand dollars Plaintiff won while at the casino. Rather than afford Plaintiff the opportunity to send his property home, Williamson took the money, stating: "faggots don't get they're [sic] money around here." To cover up the improper processing and theft, Williamson did not issue Plaintiff a property inventory sheet, making it difficult for Plaintiff to file a grievance through the prison's internal grievance system.

### H. Suicide Attempt

After processing, Plaintiff was placed in a psychiatric observation cell. On September 27, the PRT met with Plaintiff about his medical conditions. Plaintiff informed them that he was in severe pain, could not sleep, and was having suicidal thoughts. Plaintiff requested Weiner and

the PRT prescribe him Gabapentin or an equivalent pain medication, but Weiner and the PRT again declined to do so.  Weiner and the PRT also declined to provide Plaintiff with adequate medication to taper Plaintiff off Gabapentin, which Plaintiff claims violated internal Department of Correction health policy.

On September 28, 2018, Plaintiff was transferred from a psychiatric observation cell to "L-Unit," a restrictive housing unit managed by Faubert.  At some point thereafter, Plaintiff met with Faubert, who—despite knowing of Plaintiff's mental health condition—provided Plaintiff a razor blade.  Faubert told Plaintiff: "Look, your [sic] not suppost [sic] to have this fucking thing . . . I don't give a fuck what you do with it, go nuts with it, eat the fucking thing, but don't go back to the [psychiatric observation cell].  That's a lot of paperwork for nothing."

On October 6, 2018, Plaintiff met with Mushtaq.  Plaintiff complained that he was in significant pain, could not sleep, suffering hallucinations, and contemplating suicide.  Plaintiff again requested Gabapentin, and Mushtaq again declined to prescribe it.

On October 9, 2018, Plaintiff spoke on the phone with Nealon, his parole agent, and emphasized that Plaintiff was in pain, not being provided Gabapentin, and suicidal.  Nealon stated that he could not help Plaintiff, but warned him against filing additional grievances.

Later that day, Plaintiff slit his writs, overdosed on pills, and swallowed a razor in an attempted suicide.  Plaintiff was taken to Einstein Medical Center and treated for the attempted suicide.

After receiving treatment, Plaintiff was released from Einstein Medical Center back to SCI-Phoenix.  On his discharge, the Einstein Medical Center staff prescribed Plaintiff Gabapentin.  In addition, the staff informed Weiner that Plaintiff should continue to be prescribed Gabapentin and not switched to another pain medication, such as Cymbalta.  On

returning to SCI-Phoenix, Weiner prescribed Plaintiff a limited dose of Gabapentin, but, soon

thereafter switched Plaintiff onto Cymbalta.  Plaintiff complained to Weiner that Cymbalta had

not worked for Plaintiff in the past and did not treat his medical conditions.

At some point in October of 2018, Plaintiff was transferred to SCI-Retreat.[4]

## II.     Procedural History

In his Complaint, Plaintiff seeks recovery for: deliberate indifference to his serious

medical needs in violation of the Eighth Amendment against all Defendants; retaliation in

violation of the First Amendment against Weiner; violation of the Fourth Amendment against

Williamson; violation of the Due Process Clause against Williamson; and, violation of the Equal

Protection Clause against Williamson.

Now pending are: Weiner's motion to dismiss; Mushtaq and Henry's motion to dismiss;

and, Ladonne, Faubert, Nealon, and Williamson's (collectively "Commonwealth Defendants")

motion to dismiss.[5]

## III.    Legal Standard

To overcome a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[4] The Complaint also contains allegations against individuals not named as defendants.  Because Plaintiff "cannot obtain relief against non-defendants," *Freeman v. Dep't of Corr.*, 2011 WL 1304830, at *8 (M.D. Pa. Mar. 31, 2011), *aff'd*, 447 F. App'x 385 (3d Cir. 2011), the Court need not address those allegations in resolving Defendants' motions to dismiss.

[5] To the degree that Plaintiff seeks to recover monetary damages against the Commonwealth Defendants in their official capacity, those claims are not viable.  For one, a state official acting in his official capacity is not a "person" under Section 1983 and therefore not amenable to suit.  *Will v. Michigan Dep't of State*, 491 U.S. 58, 71 (1989). And two, the Commonwealth Defendants are entitled to immunity under the Eleventh Amendment.  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are . . . entitled to Eleventh Amendment immunity.").  Accordingly, the Court analyzes the claims against the Commonwealth Defendants as brought against them in their individual capacities.  *See Hafer v. Melo*, 502 U.S. 21, 27 (1991).

misconduct alleged." *Id.* In determining whether a complaint satisfies this standard, a court must first outline the required elements, then strip away legal conclusions from the complaint, and finally decide whether the well-pled factual allegations plausibly entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## IV. Discussion

### A. Exhaustion of Remedies

All Defendants argue that, whatever the merits of Plaintiff's claims, the Complaint should be dismissed because Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides: "No action shall be brought with respect to prison conditions under [Section] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). Accordingly, when failure to exhaust is raised as the basis for a motion to dismiss, dismissal is appropriate only where the failure to exhaust is "apparent from the complaint or other documents before the [Court]." *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The PLRA, however, "requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are

'available.'" *Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (quoting *Woodford*, 548 U.S. at 93). "Available means capable of use; at hand." *Small*, 728 F.3d at 271 (internal citations and quotation marks omitted). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Id.*

The Pennsylvania Department of Corrections provides a three-stage grievance review system: an initial review, an appeal, and a final review to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See Spruill v. Gillis*, 372 F.3d 218, 226-27 (3d Cir. 2004) (explaining the three stages of review). Accordingly, proper exhaustion requires completion of all three stages of review, so long as all three stages of review are "available." *Id.* In the Complaint, Plaintiff alleges that he exhausted all available administrative remedies.

Defendants argue, however, that the public records attached to their motions to dismiss establish that Plaintiff did not exhaust his administrative remedies. Defendants attach records from the SOIGA concerning grievances filed by Plaintiff, which show that Plaintiff had not appealed any grievance to the SOIGA for final review at the time the Complaint was filed. Defendants argue that the records establish Plaintiff's failure to exhaust because "[a]ny grievance which was been properly exhausted must necessarily have gone through this office."

At this stage, Defendants' argument is unavailing because exhaustion "requires only . . . exhaustion of those administrative remedies that are 'available.'" *Rinaldi*, 604 F.3d at 266. Plaintiff argues that administrative remedies were not available to him at various points during his incarceration because prison officials prevented him from taking advantage of the grievance process. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (holding an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). In addition, Plaintiff argues

that prison officials failed to respond in a timely manner to his grievances, which prevented him from taking advantage of the facilities' remedies. *See Small*, 728 F.3d at 273 (finding administrative remedy unavailable where prison failed to provide timely response to prisoner's grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Defendants offer no response to the argument that the prison's administrative remedies were not, in fact, "available" to Plaintiff. Nor do the records from the SOGIA shed any light on the actual availability of administrative remedies. Thus, the motions to dismiss the Complaint on the ground that Plaintiff failed to exhaust his administrative remedies before filing suit will be denied.

## B. Weiner

Plaintiff brings two claims against Weiner: (1) deliberate indifference to his serious medical needs in violation of the Eighth Amendment; and, (2) retaliation in violation of the First Amendment. For the foregoing reasons, Weiner's motion to dismiss Plaintiff's First and Eighth Amendment claims will be denied.[6]

### 1. Eighth Amendment

The Eighth Amendment's ban against cruel and unusual punishment prohibits a prison official's "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment deliberate indifference claim, Plaintiff must establish: (1) deliberate indifference on the part of the prison official; and, (2) a serious

---

[6] Plaintiff purports to bring only constitutional claims. Thus, the Court need not address Weiner's argument, raised seemingly out of an abundance of caution, that any claim for professional negligence should be dismissed on the ground that Plaintiff failed to produce a proper Certificate of Merit ("COM") pursuant to the Pennsylvania Rules of Civil Procedure. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 248, 262-4 (3d Cir. 2011) (explaining Pennsylvania's COM requirement and holding that the requirement is substantive law); *see also Schmigel v. Uchal*, 800 F.3d 113, 122 n.13 (3d Cir. 2015) (noting that a motion to dismiss is not the proper procedural mechanism to dismiss an action for failure to timely file a COM; rather, a party seeking to dismiss a claim for failing to properly file a COM must file a summary judgment).

medical need. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

In "determining what constitutes deliberate indifference," courts "have consistently held that mere allegations of malpractice do not raise issues of constitutional import." *Id.* "Nor does mere disagreement as to the proper medical treatment support a claim of an [E]ighth [A]mendment violation." *Id.* However, officials act with deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, prison officials act with deliberate indifference by "intentional[ly] interfer[ing] with prescribed treatment." *White v. Napoleon*, 897 F.3d 103, 109 (3d Cir. 1990).

As to what constitutes a serious medical need, "[a] medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attentions." *Monmouth Cty.*, 834 F.2d at 347 (internal quotation marks omitted).

Here, Plaintiff brings two related, yet distinct, deliberate indifference claims against Weiner: (1) deliberate indifference for failure to prescribe Gabapentin; and, (2) deliberate indifference to Plaintiff's suicidal tendencies.

### a. Deliberate Indifference for Failure to Prescribe Gabapentin

The Complaint contains sufficient factual allegations to support Plaintiff's claim that Weiner's decisions not to prescribe Plaintiff Gabapentin during his 2018 incarceration at SCI-Graterford and, later, at SCI-Phoenix, constituted a deliberate indifference to a serious medical

need in violation of the Eighth Amendment.[7]

As to the first prong—whether Weiner acted with deliberate indifference—the Complaint plausibly alleges that Weiner intentionally interfered with Plaintiff's prescribed treatment. *White*, 897 F.3d at 109. The Complaint alleges that on three separate occasions Weiner disregarded explicit instructions from outside medical providers to prescribe Plaintiff Gabapentin. First, on Plaintiff's arrival at SCI-Graterford, Weiner refused to prescribe Plaintiff Gabapentin, even though Plaintiff's treating physician at the Reading Hospital Medical Center instructed that Plaintiff be provided such treatment. Second, after Plaintiff's panic attack, Weiner again refused to prescribe him Gabapentin, despite the fact that staff at Einstein Medical Center told Weiner that Plaintiff needed the drug. Finally, after the suicide attempt, Weiner switched Plaintiff from Gabapentin onto Cymbalta, even though the Einstein Medical Center's staff informed Weiner that Plaintiff needed to be prescribed Gabapentin and should not be switched onto a similar drug, such as Cymbalta. These allegations plausibly allege that Weiner acted with deliberate indifference by denying him Gabapentin and, thus, intentionally interfering with his prescribed treatment. *Cf. id*. at 110 ("[D]eliberate indifference to, and defiance of, explicit medical instructions, resulting in serious and obvious injuries stated a violation of constitutional right.") (internal quotation marks omitted).

Weiner's argument to the contrary is premised on a mischaracterization of Plaintiff's Complaint. Weiner contends that "Plaintiff's argument is that because *he*"—meaning Plaintiff— "believes that Gabapentin is medically necessary . . . Dr. Weiner is deliberately indifferent by not prescribing it." But the Complaint also alleges that other, non-prison medical officials believed

---

[7] Weiner moves to dismiss Plaintiff's claims to the degree that those claims are premised on Weiner's refusal to prescribe Plaintiff Gabapentin in 2015, on the ground that those claims are time barred. Weiner's argument needs not be addressed because, even when construed liberally, the Complaint does not allege an Eighth Amendment violation based on Weiner's conduct during 2015.

that Gabapentin was medically necessary, and that Weiner refused to comply with those professionals' explicit instructions. It is the allegations that Weiner ignored other medical professionals' explicit prescriptions to provide Plaintiff Gabapentin that supports Plaintiffs' deliberate indifference claim.

As to the second prong, Weiner does not argue that Plaintiff's medical needs were not serious. Even so, Plaintiff's severe joint pain constituted a serious medical need because it was "diagnosed by a physician as requirement treatment." *Monmouth Cty.*, 834 F.2d at 347. Thus, Plaintiff alleges a viable deliberate indifference claim against Weiner based on the failure to prescribe Gabapentin.

### b. Deliberate Indifference to Plaintiff's Suicidal Tendencies

Plaintiff also brings a deliberate indifference claim based on Weiner's failure to prevent Plaintiff's attempted suicide. The Third Circuit has recognized that a "particular vulnerability to suicide" is a serious medical need. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). To prevail on a deliberate indifference claim related to an attempted suicide, a prisoner must establish that: (1) the prisoner had a particular vulnerability to suicide, (2) the prison official knew of that vulnerability, and (3) the prison official acted with deliberate indifference to that prisoner's vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017). Here, Plaintiff has pleaded sufficient factual allegations to make out a plausible claim that Weiner was deliberately indifferent to Plaintiff's vulnerability to suicide.

As for the first prong, "[a] particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Id*. at 230. The "particular vulnerability" standard does not entail a heightened pleading requirement or a showing that "the plaintiff's suicide was temporally imminent or somehow clinically inevitable." *Id*. Here, the Complaint

adequately alleged that Plaintiff had a particular vulnerability to suicide. On multiple occasions, Plaintiff expressed directly to Weiner and other members of staff that Plaintiff was having suicidal thoughts. *Id.* (finding that declarations by a mentally ill person that he has been thinking about killing himself indicate a "particular vulnerability to suicide"). In addition, on September 26, 2018, a mere two weeks before his suicide attempt, Plaintiff was determined to be suicidal by St. Luke's Hospital. *Id.* (holding a diagnosis of mental illness, combined with other factors, indicate a particular vulnerability to suicide). Taken together, the "the sum of facts alleged . . . are more than sufficient to support [a] plausible inference[] that there was a strong likelihood that self-inflicted harm would occur, and that [Plaintiff] therefore suffered a particular vulnerability to suicide." *Id.*

As to the second prong, the Complaint plausibly alleges that Weiner knew of Plaintiff's particular vulnerability to suicide. A "prison official[] know[s]of a particular vulnerability to suicide where [he] ha[s] had actual knowledge of a history of suicide attempts or a diagnosis identifying suicidal propensities." *Id.* Here, Weiner was provided with an outside medical diagnosis identifying Plaintiff's suicidal propensities: On September 26, 2018, during Plaintiff's intake at SCI-Phoenix, Plaintiff provided the facility's medical department—which Weiner headed—with Plaintiff's complete medical records, including the diagnosis from St. Luke's Hospital that Plaintiff was suicidal. Thus, Plaintiff has plausibly alleged that Weiner knew of the particular vulnerability to suicide.

As for the third prong, a prison official may act with deliberate indifference to a prisoner's particular vulnerability to suicide "where: (1) a defendant took affirmative action directly leading to the suicide; (2) a defendant actually knew of the suicidal tendencies of a particular prisoner and ignored the responsibility to take reasonable precautions; or (3) a

defendant failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds." *Id.* at 231. The Third Circuit has cautioned, however, that "[w]hile these factual scenarios provide helpful guidance . . . each case will present unique circumstances and should be considered on its own facts." *Id.*; *see Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 463 (3d Cir. 1989) (noting that an officer's failure to follow a "normal policy" may amount to deliberate indifference where officer had actual knowledge of a particular vulnerability to suicide).

The Complaint contains sufficient factual allegations to make out a plausible claim that Weiner demonstrated a deliberate indifference to Plaintiff's known vulnerability to suicide. Plaintiff alleges that, on his readmission to SCI-Phoenix in late September 2018, Weiner failed to taper Plaintiff off Gabapentin, despite knowing of Plaintiff's suicidal tendencies and recent use of Gabapentin. Plaintiff further avers that Weiner's failure to taper him off Gabapentin violated the Department of Corrections' internal health policies. The alleged failure to follow prison protocol in the face of actual knowledge of Plaintiff's suicidal tendencies suffices to state a plausible claim of deliberate indifference. *See Giandonato v. Montgomery Cty.*, 1998 WL 314694, at *5 (E.D. Pa. May 22, 1998) ("Whether [defendant's] conduct constituted deliberate indifference is further brought into question by the fact that [defendant] did little to ensure that the prison's policies, which were promulgated with the specific purpose of preventing exactly that which occurred in the present case, were followed."); *cf. Williams*, 891 F.2d at 463.

Accordingly, Weiner's motion to dismiss Plaintiff's Eighth Amendment claims will be denied.

## 2. First Amendment

The First Amendment "prohibits government officials from subjecting an individual to

retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 240, 256 (2006). To make out a First Amendment claim for retaliation, Plaintiff must establish that: (1) he engaged in constitutionally protected conduct; (2) he was subjected to adverse actions by a state actor; and, (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). Here, the gravamen of the claim is that, upon Plaintiff's return to SCI-Graterford in 2018, Weiner declined to prescribe him Gabapentin in retaliation for the grievances Plaintiff filed against Weiner during Plaintiff's incarceration in 2015. Although the allegations concerning the retaliatory conduct are a bit sparse, when construed liberally in favor of the Plaintiff, they are nevertheless sufficient to make out a plausible claim for retaliation. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("[W]hile we would prefer that [plaintiff's *pro se* First Amendment retaliation] complaint be more detailed, we take seriously our charge to construe *pro se* complaints nonrestrictively").

Plaintiff satisfies the first prong of the retaliation claim because, as Weiner concedes, the grievances Plaintiff filed against Weiner during the earlier period of incarceration constituted protected First Amendment conduct. *Id.* ("[Plaintiff's] allegation that he was falsely charged with misconduct in retaliation for filing complaints . . . implicates conduct protected by the First Amendment.").

As for the second prong, an action is adverse if it "would deter a reasonably firm prisoner from exercising his First Amendment rights." *Id.* "An adverse action need not be great in order to be actionable; rather, it need only be 'more than de minimis.'" *Bracey v. Link*, 2019 WL 251853, at *6 (E.D. Pa. Jan. 16, 2019) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Here, Plaintiff satisfies the second prong because denying prescribed medical care "would deter a reasonably firm prisoner from exercising his First Amendment rights," *Mitchell*,

318 F.3d at 530. *See also Vega v. Mullen*, 2018 WL 878802, at *8 (E.D. Pa. Feb. 14, 2018) ("[O]ther adverse actions included denying medical treatment"); *Lane v. Benoit*, 2018 WL 1430934, at *3 (M.D. Pa. Mar. 22, 2018) ("[Prisoner's] allegations that Defendants denied him medical care in retaliation for filing grievances are sufficient to overcome Defendants' motion to dismiss.").

Finally, with regard to the causation prong, "'a complaint need only allege a chronology of events from which retaliation may be inferred.'" *Bendy v. Ocean Cty. Jail*, 341 F. App'x 799, 802 (3d Cir. 2009) (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)); *see also Mitchell*, 318 F.3d at 530 ("[T]he word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him.").[8] Allegations of "a pattern of antagonism coupled with timing that suggests a causal link" satisfies the causal prong. *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016).

Here, the Complaint alleges "a pattern of antagonism," between Plaintiff and Weiner over the provision of Gabapentin stretching across Plaintiff's periods of incarceration: On declining to prescribe him Gabapentin, Weiner stated "you'll never get what you want deal with it." In addition, although a substantial temporal gap existed between Plaintiff filing grievances in 2015 and Weiner declining to prescribe Gabapentin in 2018, the "timing" nevertheless "suggests a causal link," *id.*, because Weiner denied Plaintiff Gabapentin immediately upon Plaintiff's readmission to SCI-Graterford—that is, at the first opportunity to do so—despite orders from Plaintiff's treating physician to provide him with the drug. Thus, the "chronology of events" laid

---

[8] Weiner argues that First Amendment retaliation claims are subject to a burden-shifting framework. True enough, *see Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (establishing a burden-shifting framework for First Amendment retaliation claims), but the burden-shifting framework is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (discussing Title VII cases); *Pepe v. Lamas*, 679 F. App'x 173, 176 (3d Cir. 2017) (applying the general rule to prisoner retaliation cases). Accordingly, the Complaint, "as in most other[] [cases], must satisfy only the simple requirements of Rule 8(a)," *Swierkiewicz*, 534 U.S. at 513, a standard which is met here.

out in the Complaint supports an inference of retaliation, which satisfies the third prong of the retaliation claim. Weiner's motion to dismiss Plaintiff's retaliation claim will therefore be denied.

### C. Mushtaq, Henry, and Ladonne

Plaintiff brings two Eighth Amendment deliberate indifference claims against Mushtaq, Henry, and Ladonne based on their work with the PRT: (1) failure to provide adequate medical assistance to Plaintiff following the June assault; and, (2) failure to address Plaintiff's suicidal tendencies. Because the claims against the PRT members are identical, because the claims are based on same set of allegations in the Complaint, and because Mushtaq, Henry, and Ladonne move to dismiss the claims on the same ground, the Court will evaluate Plaintiff's claims against the PRT members together.[9] For the following reasons, Mushtaq, Henry, and Ladonne's motions to dismiss Plaintiff's Eighth Amendment claims will be denied.

#### 1. Deliberate Indifference for Failure to Provide Adequate Medical Care

Plaintiff brings a claim against the PRT members related to his assault on J-Block.[10] When construed liberally, the claim alleges that the PRT members acted with deliberate indifference by failing to provide Plaintiff timely medical care after the assault.

---

[9] For the reasons discussed in *supra* note 6, the Court need not address Mushtaq and Henry's argument that any professional negligence claims should be dismissed.

[10] Plaintiff does not bring a claim for excessive force against the guard(s) that assaulted him. Nevertheless, Plaintiff suggests in passing that the assault "would not have happened if Defendants Ladonne, Henry, Mushtaq, and Wiener would have gave Plaintiff his medication." To the degree that Plaintiff seeks to recover for an Eighth Amendment violation on the theory that the Defendants' refusal to prescribe Plaintiff Gabapentin constituted a failure to protect him from the assault on J-Block, that claim fails. Prison officials must "take reasonable measure to guarantee the safety of . . . inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That includes a duty on prison officials to restrain from using excessive physical force against prisoners. *Id.* Moreover, prison officials have a duty to take reasonable steps to protect a victim from another officer's use of excessive force. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651. Thus, "[a]n officer's failure to stop an ongoing constitutional violation violates the Eighth Amendment when [the officer] 'had a reasonable opportunity to intervene and simply refused to do so.'" *Ricks v. Shover,* 891 F.3d 468, 479 (3d Cir. 2018) (quoting *Smith*, 293 F.3d at 650). Here, the Complaint contains no allegations that Defendants Ladonne, Henry, Mushtaq, or Wiener knew of the assault or had an opportunity to intervene. Thus, the Complaint does not state a plausible ground for relief on a claim of failure to protect.

As noted, to make out a viable Eighth Amendment deliberate indifference claim, Plaintiff must establish: (1) deliberate indifference on the part of the prison official; and, (2) a serious medical need. *Monmouth Cty.*, 834 F.2d at 346. Here, the Complaint contains sufficient factual allegations to satisfy both prongs of the Eighth Amendment claim.

As to the deliberate indifference prong, "if necessary medical treatment is . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.* Here, Plaintiff alleges that the PRT "seen [sic] Plaintiffs[']s injuries and failed to get help after knowing Plaintiff was assaulted." In addition, Plaintiff alleges that the PRT delayed providing treatment for non-medical reasons—namely, so that they did not "have to do a report" concerning the assault. Even though Plaintiff received treatment after some period of delay, the allegations make out a plausible claim of deliberate indifference on the part of the PRT. *Cf. Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) ("Whether the delay is tolerable depends on the nature of the need and the reason for the delay.").

In addition, Plaintiff plausibly alleges that his medical needs were serious following the assault. "A medical need is serious . . . if it is one that . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attentions." *Monmouth Cty.*, 834 F.2d at 347 (internal quotation marks omitted). Here, Plaintiff alleges that he suffered a head contusion as a result of the assault. After a period of delay, a guard inquired into whether Plaintiff had received medical care, indicating that the need for medical care was "so obvious that a lay person"—here, the guard—"easily recognize[d] the necessity for a doctor's attention." *Id.*

### 2. Deliberate Indifference to Plaintiff's Vulnerability to Suicide

Plaintiff also brings claims of deliberate indifference against the PRT based on their failure to prevent his attempted suicide. As discussed above, a "particular vulnerability to

suicide" is a serious medical need, *Colburn*, 946 F.2d at 1023, and to prevail on a claim of deliberate indifference to a particular vulnerability to suicide, Plaintiff must establish that: (1) he had a particular vulnerability to suicide; (2) the PRT knew of that vulnerability; and, (3) the PRT acted with deliberate indifference to that vulnerability, *Palakovic*, 854 F.3d at 223-24. Plaintiff's claim of deliberate indifference related to the suicide attempt against the PRT largely overlaps with his analogous claim against Weiner, and survives the motions to dismiss for much the same reasons.

First, as noted, the Complaint adequately alleges that Plaintiff had a particular vulnerability to suicide. Plaintiff told the PRT that he was having suicidal thoughts, and was determined to be suicidal by St. Luke's Hospital.

Second, Plaintiff also alleges that the PRT knew of this particular vulnerability. Plaintiff alleges that the PRT was provided with the diagnosis from St. Luke's Hospital, which found Plaintiff to be suicidal. In addition, Plaintiff expressed his suicidal thoughts to the PRT on several occasions, including in a conversation with Mushtaq the day before the suicide attempt.

Finally, the Complaint contains sufficient factual allegations to make out a viable claim that the PRT acted with deliberate indifference to Plaintiff's vulnerability to suicide. First, the Complaint alleges that the PRT—along with Weiner and in violation of internal health policies— failed to taper Plaintiff off Gabapentin, despite knowing of his suicidal tendencies and recent use of Gabapentin. *See Giandonato*, 1998 WL 314694, at *5. The Complaint also alleges that, on September 28, the PRT arranged for Plaintiff to be transferred from a supervised psychiatric observation cell back to L-Unit, a restrictive housing unit. That is, a day after being readmitted to SCI-Phoenix and two days after being diagnosed as suicidal by an outside medical facility, the PRT moved Plaintiff out of a supervised medical setting back into the general prison population.

The allegations that the PRT, knowing of Plaintiff's vulnerability to suicide, failed to taper Plaintiff off Gabapentin and moved him out of a supervised setting make out a plausible claim that the PRT failed to take "reasonable precautions," *Palakovic*, 854 F.3d at 231, to prevent his self-harm.[11]

Thus, the PRT's motions to dismiss Plaintiff's Eighth Amendment claims will be denied.

### D. Faubert

Plaintiff brings a claim for deliberate indifference against Faubert based on the latter's contribution to Plaintiff's suicide attempt. Faubert, like the rest of the Defendants, argues that Plaintiff's claim should be dismissed for failure to exhaust administrative remedies—an argument that, as discussed above, the Court rejects at this time. Faubert advances no other argument as to why Plaintiff's deliberate indifference claim should be dismissed. Absent such an argument, Faubert's motion to dismiss Plaintiff's deliberate indifference claim will be denied. *See Hedges*, 404 F.3d at 750.

### E. Nealon

Plaintiff alleges that Nealon—his parole agent—acted with deliberate indifference to Plaintiff's particular vulnerability to suicide based on the October 8 call. Nealon moves to dismiss the claim, arguing he is entitled to qualified immunity.

"Qualified immunity shields government officials from personal liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional

---

[11] Ladonne's argument that he can not be held liable for failing to prescribe Plaintiff Gabapentin on the ground that, as a psychologist, he cannot prescribe psychotropic medicine is unavailing. While Ladonne is free to raise that argument in the future, at the motion to dismiss stage, the Court must treat as true well plead factual allegations. Here, the Complaint alleges that Ladonne—along with Mushtaq, Henry, and Weiner—denied Plaintiff medication. Further, the Complaint also alleges that on at least one occasion Ladonne—again with Mushtaq and Henry, but without Weiner—provided Plaintiff with medication. Taken together, the allegations are sufficient to sustain a claim that Ladonne exercised authority to prescribe Plaintiff treatment. *See Pearson v. Prison Health Service*, 850 F.3d 526, 540 n.4 (3d Cir. 2017) (noting the deliberate indifference standard only applies to medical professional "with the ultimate authority to diagnoses and prescribe treatment for the prisoner").

rights of which a reasonable person would have known.'" *George v. Reheil*, 738 F.3d 562, 572

(3d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[C]onduct violates

clearly established law when, at the time of the challenged conduct, the contours of a right are

sufficiently clear that every reasonable official would have understood that what he is doing

violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). While a case need not be

"directly on point," existing precedent "must have placed the statutory or constitutional question

beyond debate." *Id.* In the absence of controlling authority, the law may be said to be clearly

established only where there exists "a robust 'consensus of cases of persuasive authority.'" *Id.* at

742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Qualified immunity is an affirmative defense—a defendant bears the burden of

establishing his entitlement to it. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). However,

"any claim of qualified immunity must be resolved at the earliest possible stage of the litigation."

*Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008). Thus, to overcome an assertion of

qualified immunity raised in a 12(b)(6) motion, a complaint "must allege facts showing that the

conduct of [the] defendant (1) violated a statutory or constitutional right, and (2) that the right

was clearly established at the time of the challenged conduct." *George*, 738 F.3d at 572. A court

"need not undertake [the] inquiry in that order." *Id.*

Here, there is neither controlling authority nor a robust consensus of cases of persuasive

authority establishing that a non-prison official, like Nealon, may be held liable for failing to

protect an inmate where the non-prison official has no authority over the condition of the

prisoner's confinement. *Cf. Giddings v. Joseph Coleman Ctr.*, 473 F. Supp.2d 617, 627 (E.D.

Pa. 2007) (Brody, J.), *aff'd*, 278 F. App'x 131 (3d Cir. 2008) (finding the law "not clearly

established as to whether a parole officer must be able to determine, based on a single, initial

encounter, whether a parolee was actually suicidal").  Indeed, the few cases that address the issue

point in different directions.  *Compare Vanordern v. Bannock Cty.*, 2016 WL 3566197, at *2 (D.

Idaho June 27, 2016) (holding police officers could not be held liable on a deliberate indifference

claim where the officers "were no longer involved in [the plaintiff's] custody"), *with Williams v.*

*Bd. of Ct. Comm'rs of Grady Cty.*, 2014 WL 5039821, at *5 (W.D. Okla. Oct. 8, 2014) (holding

plaintiff stated a plausible deliberate indifference claim against two police officers for not

alerting prison officials that plaintiff was a suicide risk); *cf. Van Smith v. Franklin*, 286 F. App'x

373, 374–75 (9th Cir. 2008) (holding that plaintiff could not state a deliberate indifference claim

against officials that "had no official influence over the conditions of Plaintiff's confinement,"

but also noting that said officials "relayed Plaintiff's safety concerns to the appropriate officials

at the jail").  The smattering of conflicting, non-binding authority has not "placed the . . .

constitutional question beyond debate," *Ashcroft*, 563 U.S. at 742, such that an official, like

Nealon, would have been on notice that he had an obligation to protect a prisoner in Plaintiff's

position.  Accordingly, Nealon is entitled to qualified immunity, and Plaintiff's Eighth

Amendment claim against Nealon will be dismissed.

### F.  Williamson

Plaintiff asserts several constitutional claims based on Williamson's conduct during the

in-take process at SCI-Phoenix, namely: (1) deliberate indifference in violation of the Eighth

Amendment; (2) unlawful seizure in violation of the Fourth Amendment; (3) unlawful taking in

violation of the Due Process Clause of the Fourteenth Amendment; and, (4) unlawful

discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

First, Plaintiff brings an Eighth Amendment claim based on Williamson's verbal

harassment during the intake process.  That allegation, however, fails to state a claim upon which

relief can be granted because "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." *Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (same); *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006) (*per curiam*) (same). Accordingly, the motion to dismiss will be granted as to the claim.

Second, Plaintiff alleges that Williamson violated the Fourth Amendment's prohibition on unreasonable seizures by taking possession of Plaintiff's property during intake. To the degree that the Fourth Amendment claim is premised on Williamson's intentional deprivation of Plaintiff's property, that claim more appropriately sounds in Due Process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (analyzing the intentional deprivation of a prisoner's property under the Due Process Clause of the Fourteenth Amendment). Accordingly, Plaintiff has failed to state a viable Fourth Amendment claim against Williamson.

Third, Plaintiff alleges that Williamson violated the Due Process clause by stealing Plaintiff's money during the intake process. The allegation, however, does not state a claim upon which relief can be granted: "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008) (*per curiam*) ("A prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available."). Here, Plaintiff had an adequate post-deprivation remedy through the prison grievance system and Pennsylvania state law under the Pennsylvania Tort Claims Act. *Hudson*, 468 U.S. at 535 (holding Due Process claim not viable where state tort remedies existed); *Mattis*,

260 F. App'x at 461 (holding Pennsylvania tort law provides adequate post-deprivation remedy to prisoners); *Lewis-Bey v. Wolff*, 2016 WL 3997248, at *5 (E.D. Pa. July 25, 2016) ("[I]f plaintiff was dissatisfied with the handling of his grievances, he had an adequate remedy under the Pennsylvania Tort Claims Act to rectify any deprivations of property."); *see* 42 Pa. C.S.A. § 8550 (waiving immunity for intentional acts of state officials). Because an adequate post-deprivation remedy existed through which Plaintiff could pursue a claim against Williamson for the intentional deprivation of Plaintiff's property, the Complaint fails to state a viable Due Process claim.

Finally, Plaintiff alleges that Williamson violated the Equal Protection Clause by discriminating against Plaintiff based on his sexual orientation. Williamson advances no argument as to the viability of the Equal Protection Clause claim.[12] Absent any argument to that effect, the Court will deny Williamson's motion to dismiss Plaintiff's Equal Protection Clause claim at this time. *See Hedges*, 404 F.3d at 750.

An appropriate order follows.


**April 3, 2019**                                        **BY THE COURT:**


                                                         **/s/Wendy Beetlestone, J.**


                                                         _____

                                                         **WENDY BEETLESTONE, J.**

---

[12] Again, except for a general failure to exhaust administrative remedies argument that, for the reasons explained above, the Court rejects at this time.